.Edward Gould *against* William Webster.

TRESPASS *quare clausum fregit*, for breaking and entering the plaintiff's close in *Ferrisburgh*, containing twenty acres of meadow, ten acres of arable, and ten acres of pasture land, described as the westerly part of Lot No. 129. drawn to the original right of *Henry Davis*, and there doing damage on the 1st of *June*, 1800, with a *continuando* to the 1st of *September* following.

General issue joined, and put to the Jury.

It was conceded, that the lands described in the declaration were, on the 21st *December*, 1795, by the commissioners under the probate, set off as dower to *Mary*, the widow of one *Benajah Webster*, in whom the fee was at his decease; that the widow went into possession, and so continued until her marriage with *William Stockman;* that during the coverture, to wit, on the 10th of *August,* 1799, *Stockman* leased the land to the plaintiff by written lease; that before the expiration of the term, to wit, in *January*, 1800, *Stockman* and wife were divorced *a vinculo matrimonii*, and after the divorce the entry was made and the crops taken by the defendant, who justified as the servant of *Mary*.

The question now made upon objection to the lease being read in evidence, is, whether the lease executed by *William Stockman* shall enure against the woman after the divorce.

*A lease made by the husband during coverture, of land held in right of his wife, of which she had been endowed in consequence of a prior marriage, cannot enure against the woman after a divorce a vinculo matrimonii, but may be considered sub modo so far as to secure the baron's tenant in his emblements, upon the determination of the lease by the divorce.*

*Amos Marsh.* We object to the shewing of this lease in evidence. We consider it as void. All the interest *William Stockman* ever had to the lands in question was acquired by the marriage and terminated with the divorce.

In analogous cases we find it laid down as law, " that if tenant in dower or by the curtesy makes a lease for years, reserving rent, and die, *this lease is absolutely determined;* so that no acceptance by the heir, or those in reversion, can make it good. For though their estate is *quodammodo* a continuance of the estate of the husband or wife, yet it is a continuance of it only for life, and they have no power to contract for or interfere with the inheritance, and consequently their leases or charges fall off with the estate whereout they were derived, and the lessee has become tenant by sufferance by his continuance of possession after."

So, in case of tenant for life, he can make no leases to continue longer than his own life. *Bacon's Abridgment,* vol. 4. p. 126.

A divorce *a vinculo matrimonii* operates a civil death to the conjugal pair as husband and wife, and should have the same operation in law in all its consequences as a natural death.

*Josias Smith, contra.* It cannot be controverted, that our lessor, *William Stockman,* at the time of the executing the lease, had full power to make it, and that the lease would have been in force until the expiration of the term, if the divorce had not intervened. We consider the interest of *Mary Webster* in these lands by her intermarriage with *William*

*Stockman* so vested in him that he had power without her aid to lease them, and his lease, the term being not expired, must operate beyond the divorce.

The law looks upon the husband and wife as one person, and therefore allows but one will between them, which is placed in the husband as the fittest and ablest to provide for and govern the family. He has an absolute power over her personal, and a qualified power over her real estate. A distinction is however here to be taken between real estate which the wife holds in her own right in fee, and that interest in land which she herself held at the time of her marriage, not of inheritance, but for a term. In the former case she must join with her baron in a deed to pass the fee, or to make a lease, which shall not determine by the dissolution of the coverture.

In the latter case, the husband may execute the lease alone, and it shall enure beyond the coverture; for the wife's interest in the lands is but a mere chattel interest, and subject, with her personal estate, to the control of the husband. *Mary Stockman*, therefore, by her marriage with *William Stockman*, subjected the lands in question to the absolute control of her husband, and the lease made by him during the coverture is valid.

We observe further, that the law is careful that the lessees of those who hold lands dependent on contingencies, shall not suffer by those events against which common foresight cannot guard.

If tenant by dower, curtesy, or for life, after having made a lease and reserved rent, die before the expiration of the term, the tenant shall have his emblements. Surely no human prudence could have

guarded against a divorce. If, therefore, the lease was determined by the divorce, the defendant, as the servant of *Mary Stockman*, cannot justify the taking the crops or emblements.

But if the interest of our lessor *Stockman* in the lands was destroyed by the divorce, it does not follow that the lease is destroyed. We learn from the books, that a man makes a lease of lands holden by him in the right of his wife, in whom the fee is, and dies, yet if the widow, or even her second husband, accepts rent, the lease shall enure in favour of the tenant in possession to the expiration of the term. *Mary Stockman*, in lieu of inciting the defendant to a trespass, should, upon the dissolution of her marriage by the divorce, have given notice to the plaintiff, who would readily have attorned to her. Her interest in the land, if any existed surely could not justify a trespass.

*Amos Marsh.* The question now before the Court is of magnitude. If a divorce *a vinculo matrimonii* does not restore to a woman all the estate she held to lands in her own right at the time of the marriage, and the husband during the coverture may carve such an estate out of them by durable leases as may utterly defeat her interest, then every man who marries a widow endowed may dispose of her estate in dower at will, without her consent and act; and this would be in opposition to the statute, which declares, that "no real estate, of which a woman shall be seised, shall pass by deed of herself and baron, unless the deed be acknowledged by her apart from her husband." Will it be contended, that the husband has

the right alone to make a long lease, which may as completely defeat the woman's right as a deed passing the fee, and thus avoid the statute?

It is said the husband might make a lease of those lands which shall now enure after the divorce, because her estate in them was a *chattel interest.* Mr. *Smith* does not speak here with his accustomed accuracy. Estates for years, by statute merchant or statute staple, *elegit,* or the like, are *chattels real,* not in dower, which is an estate for life.

But it seems to be contended, that though the husband's interest in this lease may be destroyed by the divorce, yet it must remain in force as relative to the tenant, who, it is said, would on application have attorned to *Mary.*

But if he had failed to render rent, would an action have lain upon this lease? In whose name should it have been brought. After the attornment, what would have been the situation of the tenant? If the lease contained covenants to be performed on the part of the lessor, upon the breach of those covenants who should the lessee prosecute? If he brought his action against *William Stockman,* he would plead that the lease was extinguished by the divorce, and the covenants abandoned by the attornment. If against *Mary,* she would plead *non est factum.*

Is not the doctrine of attornment almost obsolete in *England?* In this State have we ever adopted it excepting in cases of tenancy at will or at sufferance? When attornment is made by tenant for years under a lease, the lease is assigned under hand and seal, and a formal entry made on the lease of the tenant's attornment, with an acknowledgment of the payment

of some part of the rent.    The present difficulties are then avoided.    The assignee in such case cannot plead *non est factum*, for he has made himself a contracting party to the lease.    The tenant cannot refuse to render rent, for he is estopped by the attornment. But this can only be effected where the lessor assigns the lease or passes the lands to another, and delivers over the lease with the deed.    Before a tenant can safely attorn, he must have plenary evidence exhibited to him in writing of the consent of the lessor.    But *Mary Stockman* never was in possession of this lease, could shew no assignment, and could demand no attornment.

It is begging the question to say, that we cannot justify a trespass done in pursuance of her directions. We do not assume to justify a trespass, but the question is, whether trespass or not.    If her right of entry was not tolled by the lease, it is no trespass.

By the Court.    The Court consider the operation of a divorce *a vinculo matrimonii* to be, to restore to the woman her interest entire in all the real estate which the husband held in her right by the intermarriage, and which by their joint act had not been legally conveyed during the coverture.

The tenant, under a lease made by the husband during the coverture, shall not suffer by the unexpected dissolution of the marriage by the divorce, but shall be secured in his crops or emblements, and shall have egress and regress for that purpose.    For this being an action of trespass on the freehold, the whole turns upon the right of entry, and the Court place the tenant under the husband's leases made

during the coverture, after the divorce, in the same situation, as it respects the woman divorced, as the tenant would be placed with respect to the heirs at law of *Benajah Webster*, if the tenancy in dower had been extinguished by the death of the wife, in which case the lease would have been determined, and he would have had his emblements.

Let the lease be read in evidence *sub modo* to shew that it once was *in esse* to entitle the tenant to his emblements, but not to shew a right in the plaintiff to the possession.

Gould<br>v.<br>Webster.

Verdict for the defendant.

*Josias Smith*, for the plaintiff.
*Amos Marsh*, for the defendant.